UNITED STATES BANKRUPTCY COURT  NOT FOR PUBLICATION
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

NANODYNAMICS, INC.                                    Case No. 09-13438 K

                    Debtor
------------------------------------------------------------------
MARK S. WALLACH, Chapter 7 Trustee of
NanoDynamics, Inc.

                    Plaintiff

            -vs-                                       AP No. 11-1002 K

DAVID SMITH and JENNIFER SMITH

                    Defendants
------------------------------------------------------------------


Robert J. Feldman, Esq.
Janet G. Burhyte, Esq.
Gross, Shuman, Brizdle & Gilfillan, P.C.
465 Main Street, Suite 600
Buffalo, NY   14203

Attorney for Plaintiff


Jon Travis Powers, Esq.
Buchanan Ingersoll & Rooney, P.C.
50 Fountain Plaza, Suite 1230
Buffalo, NY   14202-2212

Attorneys for Defendants

OPINION AND ORDER

Although the October 23, 2015 submission on behalf of the Defendants misreads the Court's earlier decision (523 B.R. 406),[1] it does not rely solely on that misreading. Rather it goes on to make a winning argument - - the 11 U.S.C. § 365 argument.

To recap, the issues that remain for decision in this adversary proceeding - - apart from the counterclaims[2] - - are (1) the enforceability of the Agreement by the Chapter 7 Trustee under New York Business Corporation Law § 628, (2) its enforceability by the Trustee as "breach of contract" in common law terms, and (3) whether 11 U.S.C. § 542 compels payment to the Trustee of the $700,000 sought from

---

[1] The submission represents at page 8 that the earlier decision concluded that the Stock Subscription Agreement is "unenforceable . . ." The Court specifically declined to rule upon whether the Agreement violated § 10(b)/Rule 10-b-5 or not.

[2] The Court denies the Cross Motions for Summary Judgment on the counterclaims, without prejudice, for several reasons among which are these. Trial might be required as to some. Beyond that simple fact, pleadings in this adversary proceeding were completed one month before the U.S. Supreme Court decided *Stern v. Marshall*; consequently, the Answer to the Amended Complaint neither admitted nor denied the allegation that there was "core" jurisdiction over this adversary proceeding, and "consent" to jurisdiction in this Court can only be inferred from the Defendants' protracted participation in these proceeding after *Stern v. Marshall* was decided. Perhaps more importantly, any money judgment that the Defendants might win by virtue of their counterclaims would be a pre-petition unsecured claim, and it is not yet clear to the Court whether there are assets in this estate that would reach any pre-petition claims. Furthermore, the Defendants did not file a proof of claim in this case even though Defendant David Smith, as a member of the Board of Directors of the Debtor, joined all other directors in resolving, on July 10, 2009 that a Chapter 7 Petition would be filed on behalf of the Debtor. (The Petition in fact was filed on July 27, 2009, and the bar date for non-governmental proofs of claims was December 28, 2009.) Additionally, 11 U.S.C. § 510 (b) subordinates claims of equity holders in some cases in which they assert that "fraud" was committed by a debtor, so that their claim should not be elevated to "creditor" status. Also, the Defendants demand arbitration as to their counterclaim (pursuant to an arbitration clause in the Agreement) and also, somewhat paradoxically, demand a trial by jury.) For those, and perhaps other reasons, the Defendants' Motion for Summary Judgment in their favor upon the counterclaims is denied, without prejudice. And the Trustee's Motion for Summary Judgment dismissing the Counterclaims is similarly denied, without prejudice.

the Defendants.

The Court readily dismisses the Trustee's § 542 cause of action. 11 U.S.C. § 542 has no utility to collect a "debt" that has yet to be determined to be "property of the estate" because, for example, there neither has been a determination of liability on an obligation, nor identification of a source of payment (or other satisfaction) to which a debtor has a right of ownership or possession. For example, see *In re Charter Co.*, 913 F2d 1579 (11th Cir. 1990) and *In re Trauger,* 109 B.R. 502 (Bankr. Ct., S.D.Fl. 1989).

Turning now to the § 365 cause of action, the Trustee argues some very old cases stating that a bankruptcy trustee can collect the unpaid portion of a stock subscription agreement, but the Court finds that <u>those cases were superceded by statute</u>. In the Bankruptcy Reform Act of 1978 Congress specifically rejected that position by enacting § 365(c)(2) after extensive hearings, as was thoroughly and dispositively examined by U.S. Bankruptcy Court Judge Bernstein for the Southern District of New York, in the case of *In re Telligent, Inc.*, 268 B.R. 723 (2001).

As Judge Bernstein stated (at p. 734) "§ 70b [of the 1898 Act] did not list any categories of contracts that could not be assumed." Witnesses testified before Congress in 1977 and 1978, some seeking to constrain assumption of a contract that contemplated the issue of a security of the debtor. In other words, said Judge Bernstein, the industry testified, "and the Senate listened." [268 B.R. 723, 736.]

Because the Trustee may not assume the Agreement, 11 U.S.C.

§ 365(d)(1) requires that it be "deemed rejected." In the generality of cases involving rejected executory contracts, the fact of rejection does not mean that a debtor in possession or trustee may not sue upon the instrument. For example, if the executory contract is an unexpired lease of real property and the debtor were to be the landlord, a debtor in possession or trustee might conclude that it is in the best interests of the estate to reject the lease, but that does not constitute abandonment of a possible cause of action against the non-debtor for unpaid rent, damage to the premises, or the like, and that would be an action to enforce the subsequently-rejected contract (subject to a counterclaim by the tenant for breach-of-contract damages).

The case at bar is different. What remains of the matter in dispute is, for all intents and purposes, a simple purchase and sale contract - - $700,000 to be paid for 700,000 shares of the Debtor's common stock. 11 U.S.C. § 365(c)(2) is a statutory bar to issuing such stock, thereby rendering the balance of the Agreement "impossible of performance."

In the Court's view, that should end the matter under any theory of recovery, but the Court will go on to address two aspects of the Trustee's theories under the N.Y. Business Corporations Law and common law "breach of contract" principles[3] in case a reviewing court were to determine that this Court's analysis of the

---

[3]This Decision will not address "all" aspects of those causes because the Court is not certain (at this time) that the Trustee would not be entitled to a trial if the § 365 analysis set forth above were to be rejected on appeal. Because the Court has confidence in its § 365 ruling, and because finality of that ruling would moot the triable aspects of this matter, the Court will (at the end of this Decision) make a Rule 54(b) finding beginning the time to appeal this Court's rulings, in this Adversary Proceeding thus far.

§ 365 question is incorrect.[4]

As to the BCL § 628 issue and the common law issue the Defendants have asserted a great many affirmative defenses, some of which have been consensually withdrawn or stricken without opposition, but many of which survive. One of the affirmative defenses is that the process of soliciting the Agreement was so violative of § 10b and Rule 10-b(5) that it is invalid. One of the difficulties with this argument by the Defendants is the fact that the Agreement itself disclaimed the applicability of the Securities Act of 1933 and of the "Blue Sky" statutes and regulations of the state of New York. The other problem is that Mr. Smith took his seat on the Board of Directors of the Debtor, and then, apparently having acquired full knowledge of the poor financial condition of the Debtor, voted with the Board to file a petition under Chapter 7. These factors, among others, are what led this Court to refuse to decide on cross-motions for summary judgment whether federal securities statutes and regulations <u>were violated</u>. This Court ruled only that the <u>Debtor</u> could not have carried its <u>burden of proof</u> in a <u>federal securities law action</u> against these Defendants on the

---

[4]For example, in the case of *In re Telegent, supra*, the Bankruptcy Court considered an executory contract that contemplated transfers of stock, and the non-debtor party objected to assumption, relying on § 365(c)(2). That was a case under Chapter 11, not Chapter 7, and the Bankruptcy Court concluded that the stock transfers at issue did not fall within the definition of the word "issued." The case of *In re Ardent*, 275 B.R. 122 (Bankr. D.C. 2001), was a Chapter 11 case in which the Bankruptcy Court for the District of Columbia disagreed somewhat with the *Telegent* Court, but in any event distinguished the cases.

The point is that reasonable judges may disagree about the proper expanse of the prohibition contained in 11 U.S.C. § 365(c)(2). If, in the case at bar, a reviewing court were to conclude that the present Court has incorrectly interpreted the provision, it might be of use to the reviewing court if the present Court would have addressed the Trustee's "common law breach of contract claim" and BCL § 628 claim.

date that the Debtor filed its Chapter 7 Petition.[5]

And so the Court moves on to some of the other numerous affirmative defenses raised by the Defendants. The Court rejects the *Wagoner* defense. Contrary to the Defendants' argument, the *Wagoner Doctrine* is not the same as the Doctrine of *In Pari Delicto*.[6] *Wagoner* deals only with the standing of a Chapter 7 trustee to bring an action against a third party if that debtor did not have standing to bring that action. If a debtor could have brought the action without challenge to standing, but could not prevail on the merits because of the Doctrine of in *Pari Delicto*, then the trustee of the debtor suffers the same fate. In the present case, the Debtor clearly had standing to sue on the Agreement. In other words, a *Wagoner* defense may be rejected as a matter of law, and this Court so rejects it here. An *In Pari Dilecto* defense here might well require a trial, given Mr. Smith's vote as a Board Member; he might thereby have waived the affirmative defense.

Next, the Court finds that the Defendants' BCL § 1114 defense[7] does not hold up. Articles 10 and 11 of the BCL (§§ 1001-1009, 1101-1118) make it clear that in New York, corporate dissolution is strictly a statutory process (either voluntary or involuntary), and not a condition that a debtor lapses into when it decides that it is

---

[5] Stated more simply, this Court found that if there had been such an action, the Defendants would have been entitled to a directed verdict of dismissal.

[6] *Wallach v. MacDermot, Will and Emory* (Bankr. W.D.N.Y. 2006) 359 B.R. 45.

[7] See *Matter of Rappaport* (2nd Dept. 1985) 487 NYS 2d 376 and *In re Musano* (1st Dep. 2006) 813 NYS 2d 422 stating that BCL § 1114 nullifies stock issuance if a corporation in "in dissolution."

insolvent or decides to liquidate. The Delaware statutes seem to be very different, but maybe not "materially" so.

## CONCLUSION

The Court grants Summary Judgment dismissing the Complaint in its entirety because, as a matter of law, the 11 U.S.C. § 542 cause of action has no merit, and the 11 U.S.C. § 365 defense is dispositive of the rest of the Complaint.

Because trial might be required as to some of the other affirmative defenses and upon the counterclaims, and because the Court is of the belief that there is "no just reason for delay," the Court orders that this shall be viewed by the parties as a final judgment of dismissal of the Complaint, under Rule 54(b), F.R.Civ.P. (but not as to the Counterclaims).

SO ORDERED.

Dated:    Buffalo, New York
          December 11, 2015

                                             s/Michael J. Kaplan
                                        _____
                                                  U.S.B.J.